**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**SHAMANA KENT** **CIVIL ACTION**

**VERSUS** **NO. 25-621-BAJ-EWD**

**TURNER INDUSTRIES, ET AL.**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 27, 2026.

Erin Wilder-Doomes

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

S, Kent by regular mail and by certified mail return receipt requested no. 7020 0640 0001 4750 5838

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SHAMANA KENT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-621-BAJ-EWD** |
| **TURNER INDUSTRIES, ET AL.** | |

**MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER**

Before the Court is the Motion to Compel Arbitration and Stay Lawsuit Pending Arbitration (the "Motion"), filed by Defendant Turner Industries Group, L.L.C. ("Turner").[1] Defendants Rubicon LLC ("Rubicon") and International Association of Iron Workers, Local 623 ("the Union") joined Turner's Motion.[2] Plaintiff Shamana Kent ("Kent") was granted leave to file an out-of-time opposition to Turner's Motion.[3] Turner also filed a reply memorandum, which Rubicon and the Union joined.[4] As the evidence establishes that Turner and Kent entered an arbitration agreement, Rubicon and the Union are third-party beneficiaries to the arbitration agreement, and no federal statute or policy renders the claims non-arbitrable, it is recommended that Kent's claims in this case be submitted to arbitration and that this case be stayed.

---

[1] R. Doc. 24. Documents in the Court record are referred to as "R. Doc. ___." Turner represents that Turner Industrial Maintenance, L.L.C. ("TIM") is the entity that employed Plaintiff during the relevant period beginning in May 2024, not Turner. *See* R. Doc. 24-1, p. 3; R. Doc. 24-2, p. 2, ¶ 11. However, Turner further represents that both Turner and TIM are covered by the relevant arbitration provision, such that the identity of the proper defendant does not affect the relief sought in the Motion to Compel Arbitration. R. Doc. 24-1, p. 1, fn. 1; *see also* R. Doc. 24-9, p. 4 ("For the purposes of scope of the DRA, 'Company' shall include parent, subsidiary and related companies, specifically including Turner Industries Group, L.L.C., Turner Specialty Services, L.L.C., Turner Industrial Maintenance, L.L.C. Turner Industries Energy Services, LLC, and any applicable subsidiary and related companies.").

[2] R. Docs. 27, 30, 33. Rubicon and the Union expressly adopt Turner's arguments and evidence, additionally reiterating that Kent's claims against them must also be arbitrated, although they are not signatories to the arbitration agreement. Rubicon filed a separate Motion to Compel Arbitration and Stay Lawsuit Pending Arbitration, though it adopts Turner's Motion and arguments. R. Doc. 27.

[3] R. Docs. 40, 42-43.

[4] R. Docs. 44-47.

## I. BACKGROUND

Kent, who is representing herself, filed this suit for employment discrimination and retaliation against Turner on or about July 14, 2025.[5] Kent's original Complaint specifically references the ADA (Americans with Disabilities Act) and Title VII (of the Civil Rights Act), which are bases for this Court's exercise of subject matter jurisdiction under 28 U.S.C § 1331.

On July 24, 2025, after determining that Kent was allowed to proceed without prepaying the filing fee (in forma pauperis),[6] this Court ordered Kent to serve the summons and Complaint on the defendant(s).[7] On July 30, 2025, Plaintiff filed an Amended Complaint alleging claims under the ADA, Title VII, the Occupational Safety and Health Act ("OSHA"), and civil rights violations involving medical negligence and retaliation.[8] The Amended Complaint was filed against Turner, Rubicon, and the Union.[9] On the same day, Kent filed a Motion to Compel EEOC Submissions and to Declare Arbitration Agreement Unenforceable,[10] a Motion to Compel Discovery,[11] and a Motion for Summary Judgment.[12] On August 4, 2025, the Court denied Kent's motions without prejudice as the defendants had not yet made an appearance in the case and the parties had not had a chance to engage in discovery.[13] All defendants now seek to compel arbitration of Kent's claims in this case.

---

[5] R. Doc. 1.

[6] R. Docs. 2, 3.

[7] *See* R. Doc. 3.

[8] R. Doc. 5. Turner filed an opposition to Kent's request in the Amended Complaint for a preliminary injunction. R. Doc. 26.

[9] R. Doc. 5.

[10] R. Doc. 6.

[11] R. Doc. 7.

[12] R. Doc. 8.

[13] R. Doc. 10.

## II. LAW AND ANALYSIS

### A. Legal Standards

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4."[14] Further, the FAA allows "a party aggrieved by the alleged … refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court...for an order directing that such arbitration proceed in the manner provided for in such agreement."[15]

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[16] Generally, a two-step inquiry governs whether parties should be compelled to arbitrate a dispute. "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement."[17] Usually, both steps are questions for the court.[18] However, when the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes.[19] When there is a clear and unmistakable delegation clause, courts do not have the power to decide whether the claims are arbitrable. Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause

---

[14] 9 U.S.C. § 2.

[15] 9 U.S.C. § 4.

[16] *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

[17] *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original).

[18] *Id.*, citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

[19] *Id.*, citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues.[20]

When the party seeking to compel arbitration points to a purported delegation clause, the court's analysis is limited to the first step, *i.e.*, whether the parties agreed to arbitrate any set of claims. If the court finds that there is a valid agreement to arbitrate, then the only other question is whether the purported delegation clause is in fact a delegation clause. In other words, whether the delegation clause shows the parties' intent to have the arbitrator decide if a particular claim must be arbitrated.[21] If there is a delegation clause, the motion to compel arbitration should almost always be granted, unless the argument for arbitration is "wholly groundless."[22]

**B. Turner and Kent Agreed to Arbitration**

Turner claims that this dispute is subject to arbitration based on a Dispute Resolution Agreement ("DRA"), which provides, in relevant part, as follows:

> **<u>Dispute Resolution Agreement</u>**
>
> Both Employee and the Company agree to resolve any and all claims, disputes or controversies arising out of or relating to Employee's employment with the Company exclusively by binding arbitration to be administered by the American Arbitration Association ("AAA"). Both Employee and the Company agree to resolve their claims pursuant to the AAA Employment Arbitration Rules and Mediation Procedures (the "Rules") …. Examples of some, but not all, of the types of claims covered by this DRA are: unpaid wages, overtime, or other compensation; discrimination, harassment or retaliation on the basis of race, sex, age, national origin, religion, disability, gender identity, sexual orientation, or any other protected class; breach of contract or covenant; retaliation (including without limitation workers' compensation retaliation actions); wrongful discharge; … common law or tort claims such as defamation; and claims arising under any statutes or regulations applicable to employees or applicable to the employment relationship, such as the Civil Rights Acts (Title VII and § 1981), … the Americans with Disabilities Act (as amended) (both Title I and Title II), the Family and Medical Leave Act, the

[20] *Id.* at 202, citing *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).

[21] *Id.*

[22] *Kubala,* 830 F.3d at 202 n.1.

Pregnancy Discrimination Act, …the Occupational Safety and Health Act ...; as well as all claims arising under any and all state and/or local employment law[s].

Claims not covered by this DRA are claims or actions i.) seeking benefits pursuant to state workers' compensation or unemployment compensation statutes or regulations, ii.) for employee benefits which are subject to mandatory litigation and/or dispute resolution provisions contained in the applicable employee benefit plan document; iii.) to compel arbitration or to enforce an arbitrator's award under this DRA, and/or iv.) by the Employee and/or the Company for temporary and/or preliminary injunctive relief, or such other emergency injunctive and/or equitable relief until such time that an Arbitrator may be appointed. Additionally, this DRA does not apply to claims otherwise subject to and/or governed by a collective bargaining agreement ("CBA") which provides for resolution of disputes arising under the applicable CBA, unless the CBA specifically refers to and adopts this DRA. Any such temporary and/or injunctive relief entered by a court shall remain binding on the parties until such further action by the duly appointed Arbitrator. This DRA does not affect or limit an Employee's right to file a charge with a federal, state or other governmental administrative agency, including but not limited to the Equal Employment Opportunity Commission….

***

Except as expressly provided herein, the Company and the Employee expressly waive all rights to a trial in a court by a judge, magistrate, and/or jury on all claims between them….

***

The Arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability, of this DRA, including, but not limited to, any claim that any part of this DRA is unenforceable, void, or voidable….

***

Employee and the Company agree that this DRA shall be enforceable pursuant to and interpreted in accordance with the provision of the Federal Arbitration Act, and, to the extent applicable, the substantive law of the state where the claim arose ….

***

For the purposes of the scope of the DRA, "Company" shall include parent, subsidiary and related companies, specifically including Turner Industries Group, L.L.C., Turner Specialty Services, L.L.C., Turner Industrial Maintenance, L.L.C. Turner Industries Energy Services, LLC, and any applicable subsidiary and related companies. In addition to covering claims, disputes, and controversies between the

> Company and Employee, the DRA is also intended to be for the benefit of the Company's customers, employee benefit plans, and alleged joint employers … as well as their respective officers, directors, managers, and employees (current and former) (each and/or collectively, "Third Party"), each of which shall be intended third-party beneficiaries of this DRA. The agreement to submit claims individually to mandatory binding arbitration set forth herein shall apply to any claims, disputes, or controversies between the Employee and any Third Party arising out of the Employee's employment with the Company and/or his or her access to a Company customer's jobsite. Every such Company Employee bringing a claim, dispute or controversy against a Third Party shall have all such claims, disputes, or controversies governed by all other terms and conditions of the DRA …. A Third Party shall have the right to enforce the arbitration provision contained herein.
>
> Employee and Company understand that all claims and disputes covered by this DRA must be arbitrated against the other party and that neither party may file a lawsuit in any court or other proceeding in regard to such claims or disputes. If the Employee or Company files a lawsuit for any such claims or disputes, including without limitation, for those arising out of the Employee's employment (whether current or past employment), the other party may use this DRA to request a court to dismiss the lawsuit and require the party to participate in binding arbitration as provided in this DRA. The DRA shall survive the termination and/or cessation of the Employee's employment….
>
> ***
>
> Employee understands and agrees that any electronic signature or symbol of the Employee attached to this DRA with the intent to sign and accept this DRA from the Company shall have the same legal validity and enforceability as a manually executed signature.

Kent's name is printed on the DRA and the signature line below her name says, "Signed Electronically". The DRA is dated May 2, 2024.[23]

The first step in evaluating Turner's Motion is whether the parties agreed to arbitrate any set of claims, which turns on state contract law.[24] The courts "apply 'ordinary state-law principles

[23] R. Doc. 29-7.

[24] *Kubala,* 830 F.3d at 202, citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012); *see also Morrison v. Amway Corp*., 517 F.3d 248, 254 (5th Cir. 2008) ("The 'federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.' *Fleetwood Enterprises Inc*., 280 F.3d at 1073. That determination 'is generally made on the basis of "ordinary state-law principles that govern the formation of contracts."' *Id.* (quoting *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)").

that govern the formation of contracts' to determine whether an arbitration contract was formed."[25] If the existence of an arbitration contract between parties is challenged, that challenge is always for the courts to decide.[26] The Supreme Court has suggested certain categories of arguments that go to the question of the existence of an agreement to be decided by the courts, including "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent."[27] Once the arbitration contract itself has been established, however, then whether that contract may be enforced for or against the parties in the particular case is for an arbitrator to decide.[28]

Kent claims that the arbitration agreement between the parties is unenforceable "because it violates fundamental principles of informed consent, equity, constitutional due process, and religious liberty protections." Specifically, Kent claims that the DRA was not fully disclosed nor voluntarily consented to, and that she did not receive, review, or acknowledge any waiver of rights to a juridical forum. Alternatively, Kent argues that, even if there was an agreement, Turner and the Union failed to perform their obligations under the agreement and that compelled dispute

---

[25] *IMA, Inc. v. Columbia Hosp. Med. City at Dallas, Subsidiary L.P.*, 1 F.4th 385, 390-91 (5th Cir. 2021), citing *First Options of Chi., Inc.*, 514 U.S. at 944.

[26] *Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 725 (5th Cir. 2020), citing *Will-Drill*, 352 F.3d at 219. Notwithstanding that the DRA contains a delegation clause, whether there was an agreement between the parties at all is an issue properly decided by this Court. *See Will-Drill*, 352 F.3d at 219 ("In contrast, where the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator never had any authority to decide the issue. A presumption that a signed document represents an agreement could lead to this untenable result. We therefore conclude that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute."); *see also Arnold v. Homeway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) ("[W]here the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter.") (citation omitted).

[27] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n. 1 (2006) (internal citations omitted); *see also Will Drill*, 352 F.3d at 218 (concluding that, "where a party attacks the very existence of the agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute").

[28] *Bowles,* 954 F.3d at 725, citing *Will-Drill*, 352 F.3d at 218.

resolution places a barrier between Kent and her Creator.[29] Kent's argument that an agreement to arbitrate was not formed due to lack of consent is a challenge to the making of the agreement itself,[30] and is for the Court to decide.[31]

To determine whether there was a valid agreement to arbitrate, this Court must apply ordinary state-law principles of contract.[32] The DRA provides that the agreement is governed by the FAA, and, to the extent applicable, the substantive law of the state where the claim arose.[33] As there is no specific provision of the FAA governing contract formation, ordinary state-law principles governing formation of contract apply. Therefore, Louisiana law, as the law of the state where Kent's claims arose, applies to the question of whether the parties agreed to arbitrate.[34]

In Louisiana, the law's favorable treatment of arbitration agreements "[echoes] the Federal Arbitration Act."[35] Louisiana law requires that a valid and enforceable arbitration agreement contain the elements of offer and acceptance.[36] Additionally, under Louisiana law, formation of a valid contract requires four elements: "(1) the parties must possess the capacity to contract; (2) the

[29] R. Doc. 43.

[30] *See* La. Civ. Code art. 1927 ("A contract is formed by the consent of the parties through offer and acceptance.").

[31] *See Will-Drill*, 352 F.3d at 218.

[32] *Will-Drill Res. Inc*., 352 F.3d at 214.

[33] R. Doc. 29-7, p. 4.

[34] *See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 170 (5th Cir. 2004) (finding that 9 U.S.C. § 2 permits invalidation of arbitration agreements under generally applicable rules of state law). Plaintiff alleges that the acts giving rise to her claims occurred in Ascension Parish, which is in Louisiana. R. Doc. 5, p. 1.

[35] *Aguillard v. Auction Mgmt. Corp.,* 2004-2804 (La. 6/29/05), 908 So.2d 1, 7; *see also Duhon v. Activelaf, LLC,* 2016-0818 (La. 10/19/16), 411 So.3d 605, 609 ("Louisiana and federal law explicitly favor the enforcement of arbitration clauses in written contracts."); *id.* (noting that "federal jurisprudence interpreting the FAA may be considered in construing the [Louisiana Binding Arbitration Law ("LBAL")]"); La. Rev. Stat. Ann. §§ 9:4201, 9:4202 (expressing strong legislative policy favoring arbitration in LBAL).

[36] La. Civ. Code art. 1927.

parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose."[37]

Kent and Turner entered a valid, binding agreement to arbitrate. Turner has presented evidence that Kent agreed to the DRA that Turner presented as a condition of Kent's employment. Specifically, Turner submitted the Declaration of Leanne Maples, Human Resources Manager (the "Maples Declaration").[38] According to the Maples Declaration, Kent executed the DRA as a condition of employment all three (3) times she was hired, which executed DRAs were retained in Kent's personnel file.[39] This includes the DRA at issue, electronically signed by Kent, which would govern Kent's claims related to her employment, starting May 3, 2024.[40] Kent does not deny that her electronic signature is on the operative DRA, and Kent's electronic signature on the DRA is valid.[41] The DRA further provides as follows with regard to electronic signatures: "Employee understands and agrees that any electronic signature or symbol of the Employee attached to this DRA with the intent to sign and accept this DRA from the Company shall have the same legal validity and enforceability as a manually executed signature."[42] Louisiana law also provides that a person who signs a written instrument is presumed to know its contents and cannot avoid her obligations by contending (as Kent suggests, here)[43] that she did not read the agreement, that it

---

[37] *Provenza v. Cent. & Sw. Servs., Inc.*, No. 34162 (La.App. 2 Cir. 12/15/00), 775 So.2d 84, 89, citing La. Civ. Code arts. 1918, 1927, 1966, and 1971.

[38] R. Doc. 29.

[39] R. Doc. 29, p. 3, ¶¶ 13-15.

[40] R. Doc. 5, p. 1 (stating that Kent was hired by Turner Industries on May 3, 2024, and assigned to the Rubicon site as a temporary laborer); R. Doc. 29, p. 3, ¶ 15.

[41] *See Barras v. Jackson*, 2019-1276 (La.App. 1 Cir. 9/19/20), 393 So.3d 902, 908 (finding an electronic signature on an uninsured motorist rejection form valid and noting "[s]uch a holding is consistent with LSA-R.S. 9:2607, which provides that a record or signature may not be denied legal effect or enforceability solely because it is in electronic form, and if a law requires a signature, an electronic signature satisfies the law. See LSA-R.S. 9:2607(A) & (D).").

[42] R. Doc. 29-7, p. 5.

[43] R. Doc. 43, p. 1 ("The arbitration agreement at issue was neither fully disclosed nor voluntarily consented to by the Plaintiff. Under Louisiana Civil Code 1927, consent is a necessary element of contract formation. Plaintiff did not

was not explained, or that she did not understand it.[44] Additionally, Kent does not allege that she lacked capacity to enter into the DRA,[45] that there was no object for the agreement, or that the agreement has an unlawful purpose.[46] Instead, Kent argues that, even if an agreement existed, Turner Industries and/or the associated union failed to perform their obligations under any alleged contract, which renders the contract voidable under La. Civil Code articles 2029-2037. Kent also argues that enforcement of the agreement violates her religious freedom, that Turner should be judicially estopped from enforcing the DRA because Turner represented in EEOC filings that Kent was an employee of the Union, and that "[e]quity demands recognition of the Plaintiff's right to define her own labor, moral code, and spiritual boundaries without external imposition."[47]

The DRA contains a delegation clause which states, "The Arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability, of this DRA, including, but not limited to, any claim that any part of this DRA is unenforceable, void, or voidable."[48] A delegation clause is a provision in an arbitration agreement that "transfer[s] the court's power to decide threshold questions of arbitrability to the arbitrator."[49]

---

receive, review, or acknowledge any waiver of rights to a judicial forum. The agreement surfaced only after termination, and was never discussed during onboarding….").

[44] *Hughes v. Uber Technologies, Inc.*, 718 F.Supp.3d 571, 580 (E.D. La. Feb. 21, 2024), citing *Express Lien, Inc. v. Handle, Inc*., No. 19-373, 2021 WL 2476853, at *4 (E.D. La. June 17, 2021) (noting that this finding "is consistent with Louisiana law holding that 'signatures are not mere ornaments' and that 'a person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it'" (cleaned up)).

[45] Under Louisiana law, "[a]ll persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting." La. Civ. Code art. 1918.

[46] Indeed, arbitration is not just a lawful but favored object. *See e.g., Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983) (noting federal policy favoring arbitration). Under Louisiana law, parties are free to contract for any object that is lawful, possible, and determined or determinable. *See* La. Civ. Code art. 1971.

[47] R. Doc. 43.

[48] R. Doc. 29-7, pp. 3-4.

[49] *Kubala,* 830 F.3d at 202.

"If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, we will consider that clause to be valid and compel arbitration."[50]

Kent does not even reference the delegation clause in her opposition memorandum, much less challenge the delegation clause itself. Additionally, the delegation clause in the DRA is similar to other clauses that have been found valid and enforceable.

For example, in *Kubala*, the Fifth Circuit found the following to be a valid delegation clause: "The arbitrator shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy and any agreement to arbitrate a Covered Dispute."[51] The *Kubala* court noted that the clause was similar to a clause that had been upheld in *Rent-A-Center*, which provided as follows: "The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."[52]

As in *Kubala*, Kent does not address the delegation clause or point to any external reason (under federal labor law or otherwise), why her claims against Turner should not be sent to arbitration. This Report and Recommendation does not address the merits of whether Kent's claims against Turner must be arbitrated rather than tried in court or whether Plaintiff's voidability or Constitutional arguments have merit. The delegation clause of the DRA makes it clear that it is the

[50] *Hill v. Jackson Offshore Holdings, L.L.C.*, 175 F.4th 324, 332 (5th Cir. 2026), citing *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018).

[51] *Kubala*, 830 F.3d at 204.

[52] *Id.*, citing *Rent-A-Ctr.*, 561 U.S. at 66.

responsibility of the arbitrator to answer these questions.[53] Because the DRA contains a valid delegation clause, the role of this Court is very limited. Having found that Turner and Kent entered into an arbitration agreement, referral of Kent's claim against Turner to arbitration is required.[54]

As the DRA contains a valid delegation clause, any of Kent's arguments about the enforceability of the DRA are for the arbitrator to decide.

**C. Kent's Claims Against Rubicon and the Union Are Also Subject to Arbitration**

While ordinarily a party must have signed the contract containing the arbitration clause to enforce arbitration, a non-signatory may enforce arbitration if permitted to do so under relevant state law.[55] Under Louisiana law, "[a] contracting party may stipulate a benefit for a third party called a third party beneficiary."[56] This type of contract provision is called a "stipulation *pour autrui*."[57] There are three criteria for determining whether contracting parties have created a stipulation *pour autrui*: 1) "the stipulation for a third party is manifestly clear," (2) "there is certainty as to the benefit provided the third party," and (3) "the benefit is not a mere incident of the contract between the promisor and the promisee."[58]

Although not addressed by Kent, the DRA meets the requirements of a stipulation *pour autrui* as to Rubicon and the Union. First, the stipulation for a third party is manifestly clear. The

---

[53] *See Reyna v. International Bank of Comm.*, 839 F.3d 373, 379 (5th Cir. 2016) ("Because the arbitration agreement contains a delegation clause, any disputes about the arbitrability of [the plaintiff's] claim or the scope of the arbitration agreement must be decided by the arbitrator, not the courts."). The delegation clause specifically states that arbitrator has the exclusive authority to determine the enforceability of the DRA. R. Doc. 29-7, pp. 3-4.

[54] *See Kubala*, 830 F.3d at 203 ("Because Supreme asserts that the agreement contains a valid delegation clause, our analysis is initially narrow. If we determine that the agreement does contain such a clause, the role of the federal courts is strictly limited—we must refer the claim to arbitration absent some exceptional circumstance. If the agreement does not contain a delegation clause, we must perform the ordinary arbitrability analysis.").

[55] *Crawford Prof. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014).

[56] La. Civ. Code art. 1978.

[57] *Williams v. Integon Nat'l Ins. Co.*, 132 F.4th 801, 805 (5th Cir. 2025)

[58] *Id.* at 806, citing *Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary,* 939 So.2d 1206, 1212 (La. 2006).

DRA expressly provides that it "is also intended to be for the benefit of the Company's customers" … "and alleged joint employers" … "each of which shall be intended third-party beneficiaries of this DRA. The agreement to submit claims individually to mandatory binding arbitration set forth herein shall apply to any claims, disputes, or controversies between the Employee and any Third Party arising out of Employee's employment with the Company and/or his or her access to a Company customer's jobsite."[59] As Kent has sought joinder of claims against Rubicon and the Union as joint employers,[60] and as Rubicon is Turner's customer, the DRA extends to her claims against these defendants by its plain terms. Further, there is certainty as to the benefit provided to third parties by the DRA, which states that "any claims, disputes, or controversies between the Employee and any Third Party arising out of the Employee's employment with the Company" be submitted to "mandatory binding arbitration."[61] Finally, the benefit is not merely incidental to the contract between Kent and Turner. A benefit that flows to a third party is not "merely incidental" when the underlying contract "expressly provide(s) for" it under a particular "enumerated circumstance."[62] Additionally, the DRA is reciprocal and requires third party beneficiaries like Rubicon and the Union to submit their disputes to arbitration in addition to Kent, which also indicates that the benefit to Rubicon and Union is not incidental.[63]

As Rubicon and the Union are third party beneficiaries of the DRA under Louisiana law, there is also a valid agreement requiring arbitration of Plaintiff's claims as to these defendants.

---

[59] R. Doc. 29-7, p. 4.

[60] R. Doc. 5, p. 2 (prayer for relief).

[61] R. Doc. 29-7, p. 4.

[62] *Integon Nat'l Ins. Co*., 132 F.4th at 808.

[63] *Stadtlander v. Ryan's Fam. Steakhouses, Inc*., 24,284 (La.App. 2 Cir. 4/4/01), 794 So.2d 881, 887, writ denied, 2001-1327 (La. 6/22/01), 794 So.2d 790.

### D. To the Extent Kent's Request for Injunctive Relief Remains Pending, It Should be Denied

Kent's Amended Complaint seeks "injunctive relief" in addition to the other causes of action discussed above.[64] Despite the request for injunctive relief being contained in the title of the Amended Complaint, Kent did not file a motion for an injunction or for a temporary restraining order ("TRO"), and the allegations seeking injunctive relief are limited. Specifically, Kent only requests in the prayer for relief that the Court "enjoin Turner from further retaliation."[65] The Court, in denying Kent's request for a TRO, also considered the allegations contained in the Declaration of Hardship and Ongoing Damages,[66] attached to the Amended Complaint, and stated: "While the emergency relief Plaintiff seeks is not abundantly clear from her Amended Complaint, it appears that she generally seeks a TRO requiring Defendant Turner Industries to rehire her and correct records that document the nature of Plaintiff's injury so that she can receive proper workers' compensation benefits."[67] The Court denied Kent's request for a TRO, in part, because Kent failed to comply with Rule 65(b)(1)'s notice requirements and partially because the request was not made in a document separate from her Amended Complaint, as required by Local Civil Rule 65.[68] The Court further ordered Turner to file any opposition to Plaintiff's request for a preliminary

[64] R. Doc. 5.

[65] *Id.*

[66] *Id.*, pp. 3-4, ¶ 9 (requesting that the Court take judicial notice of Kent's "hardship when evaluating any motions for injunctive relief, compensatory and punitive damages, and emergency relief to reinstate income and allow for continued care".)

[67] R. Doc. 12, p. 2.

[68] *Id.* at p. 4. Though a TRO may be issued without written or oral notice to the adverse party or its attorney, Fed. R. Civ. P. 65(b)(1) requires the movant's attorney (or in this case the movant as Kent is representing herself) to certify "in writing any efforts made to give notice and the reasons why it should not be required." Kent failed to comply with this requirement. Local Civil Rule 65 specifies that "[a]n application for a temporary restraining order or for a preliminary injunction shall be made in a document separate from the complaint and if not, may not be considered by the Court."

injunction within 21 days of service of process.[69] Turner was served on December 30, 2025, and filed an opposition to Kent's request for a preliminary injunction on January 20, 2026.[70]

The DRA lists requests for temporary and/or preliminary injunctive relief or other emergency injunctive or equitable relief until an arbitrator is appointed as claims not covered by the DRA.[71] As the Court noted in its August 19, 2025 order, Plaintiff did not comply with Local Civil Rule 65 which requires Plaintiff to file any request for injunctive relief in a document separate from the complaint. This alone would allow the Court to deny injunctive relief. Additionally, as Turner notes in its opposition, Plaintiff has failed to address or establish the four elements required to obtain a preliminary injunction.[72] To obtain preliminary injunctive relief, a plaintiff must show: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest."[73] "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."[74] A plaintiff's failure to meet her burden on any element is enough

---

[69] R. Doc. 12, p. 4.

[70] R. Docs. 22, 26. Turner also filed the Motion on the twenty-first day after service.

[71] R. Doc. 29-7, p. 2 ("**Claims not covered by this DRA** are claims or actions … (iv) by the Employee and/or the company for temporary and/or preliminary injunctive relief, or such other emergency injunctive and/or equitable relief until such time that an Arbitrator may be appointed….") (emphasis in original).

[72] R. Doc. 26, p. 2.

[73] *Texas Trib. v. Caldwell Cnty., Texas*, 121 F.4th 520, 525 (5th Cir. 2024); *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

[74] *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations and quotations omitted). *See also Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (preliminary injunctive relief "is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors").

for a court to deny the request for a TRO or a preliminary injunction.[75] Moreover, "[c]ourts have wide discretion with respect to whether to grant preliminary injunctions."[76]

Kent failed to identify the elements required to obtain injunctive relief or to allege sufficient facts to establish those elements. It is Kent's burden to prove these elements, and she has not even argued, let alone established, that she has a substantial likelihood of success on the merits of her claims. This failure is enough to deny Kent's request for a preliminary injunction without considering the other elements. As Kent has not established a substantial likelihood of success on her claims, it is recommended that, to the extent pending, any request for a preliminary injunction be denied.

## III. Conclusion and Recommendation

Kent and Turner entered a binding, valid arbitration agreement which contains an enforceable delegation clause and a stipulation for the benefit of third parties, requiring referral of Kent's claims in this case to arbitration. Accordingly,

**IT IS RECOMMENDED** that the Motion to Compel Arbitration and Stay Proceedings,[77] filed by Defendant Turner Industries Group, L.L.C., joined by Defendants Rubicon LLC and International Association of Iron Workers, Local 623, and the separate Motion to Compel Arbitration and Stay Lawsuit Pending Arbitration,[78] filed by Defendant Rubicon LLC, be **GRANTED**, compelling that Plaintiff Shamana Kent claims in this case be sent to arbitration and that this case be stayed pending a final disposition of the arbitration.

---

[75] *See Davis v. Thompson*, No. 19-493, 2020 WL 5775147, at *1 (M.D. La. Sept. 28, 2020), citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 261 (5th Cir. 1990) ("If a plaintiff fails to meet his burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction.").

[76] *Jones v. Gusman*, No. 12-859, 2015 WL 5714619, at *2 (E.D. La. Sept. 28, 2015), citing *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir.1987).

[77] R. Doc. 24.

[78] R. Doc. 27.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for a preliminary injunction, to the extent pending, be **DENIED**.

**IT IS ORDERED** that the Clerk of Court transmit this Magistrate Judge's Report, Recommendation, and Order to Plaintiff Shamana Kent by regular mail and by certified mail, return receipt requested to the address on PACER.

Signed in Baton Rouge, Louisiana, on August 27, 2026.

Erin Wilder-Doomes

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**